UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| SOGEFI ENGINE SYSTEMS MEXICO S. de R.L. de C.V., | Case No. 2:25-cv-11579 |
| | Hon. |
| Plaintiff, | |
| v | |
| NOVARES US ENGINE COMPONENTS, INC., f/k/a MINIATURE PRECISION COMPONENTS, INC., | |
| Defendant. | |

_____/

## VERIFIED COMPLAINT

Plaintiff Sogefi Engine Systems Mexico S. de R.L. de C.V. states the following for its verified complaint against Defendant Novares US Engine Components, Inc.:

### Parties, Jurisdiction, and Venue

1.      Sogefi Engine Systems Mexico S. de R.L. de C.V. ("Sogefi") is a Mexican corporation that operates a manufacturing plant in Apocada, Nuevo León, Mexico.

2.      Sogefi is owned directly and indirectly by Sogefi Air & Cooling S.A.S, a French company.

3.     In 2019, Defendant Miniature Precision Components, Inc. was acquired by the Novares Group and changed its name to Novares US Engine Components, Inc. ("Novares").

4.     Novares is a Wisconsin corporation with its principal place of business in Wisconsin.

5.     Novares is owned and operated by Novares US LLC, which is a Michigan corporation with its principal place of business in Livonia, Michigan.

6.     Sogefi and Novares both negotiated the contracts underlying the claims in this Complaint from their parent companies' facilities in this district. Venue is thus proper in this Court under 28 U.S.C. § 1391(b)(2).

7.     Novares has also purposefully availed itself of the privilege of acting in Michigan by negotiating contracts in Michigan, supplying materials to Michigan, and even initiating its own lawsuits in this Court (*see, e.g.,* Case No. 19-10165).

8.     This action is between a foreign citizen and a citizen of Wisconsin and the amount in controversy exceeds $75,000. The Court thus has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(2).

## The Parties' Agreements

9.      Sogefi, as buyer, and Novares, as seller, are parties to three long-term requirements contracts for the supply of automotive component parts. (The "Agreements," attached as Exhibit 1.)

10.     Two of the three Agreements are for in-production automotive parts (the "Production Parts"), meaning they are assembled into components that Sogefi sells to its customers just-in-time for current production vehicles. Those Agreements are identified as Contracts of Supply 130511 and 192000 (the "Production Agreements").

11.     The Production Agreements are both directed-buy arrangements. This means that Sogefi's OEM customers (General Motors and Stellantis) required Sogefi to contract with Novares for the Production Parts. As part of that arrangement, Sogefi's OEM customers negotiated pricing directly with Novares and then simply pay Sogefi a "pass-through" price. So while Sogefi issued the Production Agreements directly to Novares, Sogefi does not have any say in the pricing for the Production Parts.

12.     The third contract is for aftermarket automotive parts (the "Aftermarket Parts," and together with the Production Parts, the "Parts") and identified as Contract of Supply 191525 (the "Aftermarket Agreement").

13.     Sogefi's North American General Purchasing Terms and Conditions are incorporated into the Agreements by reference. (The "GTC," attached as Exhibit 2.)

14.     Under the Agreements, Sogefi is obligated to purchase, and Novares is obligated to supply, Sogefi's requirements for the Parts, which Sogefi incorporates into oil separators and manifolds that Sogefi supplies to its original equipment manufacturer ("OEM") customers, which include Ford, GM, and Stellantis.

15.     Novares supplies the Parts to Sogefi's plants in Mexico according to releases—which are electronic messages that contain required shipping dates and quantities—issued under the Agreements.

16.     Sogefi issued the Agreements to Novares, and Novares accepted the Agreements and the GTC through, among other things, manufacturing and shipping the Parts subject to the Agreements.

17.     The Agreements require timely delivery of all Parts ordered by Sogefi:

> Time and quantities are of the essence under this Order.  Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer, as set forth in this Order and related Material Releases . . . . Failure to meet agreed delivery time and quantities shall be considered a breach of this Order and Seller shall pay to Buyer any damages or expenses imposed upon or incurred by Buyer as a result of such breach.  [GTC § 3(f).]

18.     This requires Novares to deliver all Parts ordered by Sogefi on time

and in the quantities ordered.

19.     Pricing under the Agreements is firm:

> [T]he purchase price: (i) is a firm fixed price for the duration of the
> Order and not subject to increase for any reason, including increased
> raw material costs, increased labor or other manufacturing costs,
> increased development costs, currency fluctuations or changes in
> volumes or program length from those estimated or expected; (ii) is
> inclusive of all federal, state, provincial, value added and local taxes
> and any duties applicable to provision of the Supplies; and (iii) is
> inclusive of all storage, handling, freight, packaging and all other
> expenses and charges of Seller. [GTC § 2.]

20.     The Agreements further require Novares to indemnify Sogefi for

Novares's breach of the Agreements:

> Seller will defend, indemnify, and hold harmless Buyer . . . against all
> damages, claims, or liabilities and expenses (including attorneys' fees
> and other professionals' fees, settlements, releases and judgments) to
> the extent such damages, claims, or liabilities and expenses arise out
> of or relate in any way to Seller's representations, performance or
> obligations under this Order . . . .  [GTC § 12(a).]

21.     Recognizing the nature of the automotive industry and the need for

just-in-time deliveries, the parties also agreed that money damages would be an

inadequate remedy to Sogefi if deliveries are not made as required:

> In any action brought by Buyer to enforce Seller's obligations in
> connection with the production or delivery of Supplies . . . Seller
> acknowledges and agrees that monetary damages are not a sufficient
> remedy for any actual, anticipatory or threatened breach of the Order
> and . . . Buyer shall be entitled to specific performance and injunctive
> equitable relief . . . as well as Buyer's costs and reasonable attorneys'
> fees.  [GTC § 11(b).]

## Novares Breaches and Repudiates the Agreements

22.     On April 17, 2025, 100% of Novares Group was sold to the Michigan-based First Brands Group, which is a conglomerate of automotive suppliers.

23.     Just two weeks later, on April 30, 2025, Novares sent an email to Sogefi stating that "[w]ith the recent acquisition of Novares, we are implementing urgent price adjustments and payment terms that are essential to support our operations." (Email Chain, attached as Exhibit 3.) Novares attached a letter explaining that, effective May 13, 2025, it intended to take a price increase of 34.7% on all Parts and implement payment terms of net-30 days. (4/30/25 Novares Ltr., attached as Exhibit 4.)

24.     A price increase of this size would be unprecedented and would render Sogefi's manufacture of components containing the Parts wholly unprofitable.

25.     Sogefi responded on May 2, 2025. (Ex. 3.) Sogefi explained that pricing was set by the Agreements, and that for "customer-directed products," (i.e., the Production Parts), "pricing is negotiated directly between [the OEM] and [Novares]." (*Id*.) Accordingly, "any price adjustments must be reviewed and agreed upon directly with [the OEM]." (*Id*.) Sogefi further explained that it could not accept a 34.7% price increase on the Aftermarket Parts either.

26.     However, in an effort to discuss potential pricing adjustments in good faith, Sogefi requested information regarding whether Novares had suffered any increased costs for materials or components and, if so, a cost breakdown and invoices documenting any commodity price increases. (*Id.*)

27.     Novares did not send Sogefi any of the requested information.

28.     Instead, on May 13, 2025, Novares told Sogefi that it would not be providing any cost breakdowns. (*Id.*)

29.     And on May 14, 2025, Novares informed Sogefi that it intended to stop shipment of the Parts under the Agreements without Sogefi's consent to Novares's demanded price and payment changes. (*Id.*)

30.     Recognizing the threat this breach would pose to Sogefi, Sogefi responded in writing the next day. (5/15/25 Sogefi Ltr., attached as Exhibit 5.) Sogefi's May 15, 2025 letter to Novares explained that Novares is not entitled to a price increase, is still bound by the firm pricing in the Agreements, and is in breach and liable for all damages resulting from stopping shipments. Sogefi requested adequate assurances under UCC § 2-609 in writing no later than 5 PM on May 16, 2025.

31.     As of the date of this Verified Complaint, Novares has not supplied the requested adequate assurances.

32.     This amounts to an anticipatory repudiation.

33.     Novares followed through on its threat and, at least temporarily, stopped supply of the Aftermarket Parts under the Aftermarket Agreement the week of May 12, 2025. This was a breach of the Aftermarket Agreement and Sogefi currently estimates that it has run out of Aftermarket Parts as of May 28, 2025.

34.     On May 26, 2025, Novares also temporarily stopped supply of the Production Parts, telling Sogefi that Novares would not honor upcoming releases issued under the Production Agreements. Novares has since shipped Production Parts, but has not committed to meeting future releases or confirmed that it will not suspend shipments again.

35.     Unless Novares meets all releases, Sogefi estimates that it would run out of Production Parts in less than two weeks, shutting down Sogefi's corresponding production line that same day and causing Sogefi to start missing shipments to its customers GM and Stellantis that same day.

36.     Novares has refused to withdraw its repudiation or commit to continuing supply of the Production Parts under the Production Agreements.

37.     Sogefi provided Novares another opportunity to affirm its supply obligations in a letter dated May 20, 2025, and Novares again refused to provide adequate assurances. (5/20/25 Sogefi Ltr., attached as Exhibit 6.)

**Novares's Breach and Repudiation Threaten Supply Chains**

38.     Sogefi incorporates the Production Parts into products that Sogefi produces and sells to its OEM customers on a just-in-time basis.

39.     Just-in-time delivery in the automotive industry requires that Novares produce and deliver the Production Parts to Sogefi on a timely basis so that Sogefi can produce and deliver component parts to its OEM customers on a timely basis; otherwise, the entire supply chain falters, stopping production at Sogefi and its major OEM customers' plants. These shutdowns come with enormous consequences, as workers are sent home and part orders to potentially thousands of other suppliers across the globe are zeroed-out. The shutdowns would thus affect suppliers up and down the supply chain.

40.     The just-in-time delivery model that is standard in the automotive industry means that neither Sogefi nor its customers have a sufficient inventory of excess products to withstand stopped shipments from their suppliers, like Novares.

41.     As Novares is aware, Sogefi requires customer approval for its supply of the Parts.  As a result, Sogefi cannot replace Novares with another Parts supplier in time to avoid supply chain disruptions.

42.     Because of this just-in-time supply chain, any delay in delivery of the Production Parts or a delivery of less than the required quantities of Production Parts can lead to a shutdown of manufacturing up and down the supply chain.

43.     Novares knows that abruptly reducing deliveries of the Production Parts will cause catastrophic harm to Sogefi and its major OEM customers.  Sogefi has advised Novares of this potential harm.

44.     Such catastrophic harm will include, but is not limited to, Sogefi and its major OEM customers stopping production for components and vehicles related to the Production Parts. These production stoppages would result in Sogefi and its OEM customers sending employees home and incurring hundreds of thousands to millions of dollars per hour in reduction or stoppage costs.

45.     Sogefi would also suffer irreparable harm to its goodwill and reputation in the automotive industry as an on-time supplier in the event Novares stops shipping the Production Parts.

46.     The same is true regarding the Aftermarket Parts. While Sogefi's customers no longer depend on the Aftermarket Parts as part of its just-in-time vehicle production, the Aftermarket Parts are needed to fulfill specific orders from Sogefi's OEM customer. Novares's failure to supply the Aftermarket Parts means orders will go unfulfilled, which will cause Sogefi to breach its contractual obligations to its customer, harming Sogefi's reputation as an on-time supplier.

## COUNT I
## Breach of Contract by Novares

47.    Sogefi incorporates by reference in this Count I all preceding allegations in this Verified Complaint.

48.    The Agreements are valid and mutually binding contracts between Sogefi and Novares and require Novares to supply Sogefi with all ordered quantities of the Parts at the prices set forth in the Agreements.

49.    Sogefi has fulfilled all of its contractual obligations under the Agreements.

50.    Novares's failure to timely deliver the ordered quantities of Parts to Sogefi in the quantities and on the dates set forth in the Agreements and releases issued under the Agreements is a breach of Novares's contractual obligations.

51.    Novares has also breached the Agreements by repudiating them.

52.    Sogefi has or will suffer damages in an amount greater than $75,000 as a result of Novares's breaches, including costs and fees to-be incurred to Sogefi's customers, any resulting alleged liability imposed upon Sogefi by Sogefi's customers, damage to Sogefi's business reputation, and attorneys' fees and costs.

## COUNT II
### Anticipatory Breach of Contract by Novares

53.     Sogefi incorporates by reference in this Count II all preceding allegations in this Verified Complaint.

54.     Novares has anticipatorily breached the parties' Agreements by refusing to provide adequate assurances and by stating an intent not to deliver the Parts to Sogefi in the future, despite its continuing obligation to do so under the Agreements.

55.     If Novares does not supply the Parts, Sogefi will be unable to fulfill its obligations to supply its major OEM customers with the Sogefi products into which the Parts are incorporated, and Sogefi will be forced to dramatically reduce or shut down its plant operations relating to the Parts.

56.     Similarly, without the finished Sogefi products incorporating the Production Parts, Sogefi's major OEM customers' production lines related to the vehicles involved will be dramatically reduced or shut down, resulting in numerous idle plants and potential layoffs.

57.     Novares would be responsible for the monetary damages for these line shutdowns caused by its breach of the Agreements.

58.     Sogefi's ability to locate an alternate supplier and obtain the OEMs' approval before such a shutdown is simply not possible.

59. If Novares carries though on its anticipatory repudiation and does not perform its obligations, Sogefi will have no adequate remedy at law for the harm caused. The parties expressly agreed that injunctive relief is an appropriate remedy in such a circumstance.

## COUNT III
## Declaratory Judgment

60. Sogefi incorporates by reference in this Count III all preceding allegations in this Verified Complaint.

61. There is an actual case in controversy between the parties for which declaratory judgment is appropriate under 28 U.S.C. § 2201(a).

62. Novares has contractual obligations to continue to supply the Parts to Sogefi under the Agreements at the prices agreed upon in the Agreements.

63. Sogefi has fully complied with all of its obligations under the Agreements and has not breached the Agreements.

64. Novares has refused to comply with its contractual obligation to continue to supply the Parts to Sogefi under the Agreements at the prices agreed upon in the Agreements.

65. The consequence of this disagreement between Sogefi and Novares is significant, as it could result in a shutdown of automotive production at Sogefi's plant and Sogefi's OEM customers' plants too.

66.     To avoid this significant public and private harm, and to provide the parties with needed clarity regarding the extent of their contractual obligations, Sogefi requests a declaratory judgment that the parties' are bound by the Agreements, which require Novares to supply Sogefi with the quantities of Parts as ordered by Sogefi and at the contractual prices.

## Relief Requested

Sogefi requests the following relief from this Court:

A.     Injunctive relief preventing Novares from taking any action inconsistent with its supply obligations to Sogefi under the Agreements;

B.     An order of specific performance and/or mandatory injunction requiring Novares to continue to supply Sogefi with the ordered quantities of the Parts under the Agreements and at the prices agreed upon in the Agreements;

C.     A judgment declaring that the parties' are bound by the Agreements, which require Novares to supply Sogefi with the quantities of Parts as ordered by Sogefi and at the contractual prices;

D.     Monetary damages suffered by Sogefi due to Novares's actions;

E.     An award of attorney's fees and other costs arising out of Novares's breaches under the Agreements; and

F.     All other relief as the Court may deem just, equitable or appropriate under the circumstances.

WARNER NORCROSS + JUDD LLP

Dated:  May 29, 2025                    By: */s/Adam T. Ratliff*
                                            Michael G. Brady (57331)
                                            Adam T. Ratliff (P79892)
                                            2715 Woodward Ave., Ste. 300
                                            Detroit, Michigan 48201
                                            313.546.6000
                                            mbrady@wnj.com
                                            aratliff@wnj.com
                                            *Attorneys for Plaintiff*

## **<u>Verification</u>**

I declare under penalty of perjury that the contents of the foregoing complaint are true and accurate to the best of my knowledge, information, and belief.

Executed on: May 29, 2025

Jim Kalapodis
Sogefi - Account Manager

16